THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
David H. March and Christine A. March,       
Respondents,
 
 
 

v.

 
 
 
Presidential Brokerage, Inc., Scott Key, P. Georgia French, and Mark 
 French,        Appellants.
 
 
 

Appeal From Charleston County
A. Victor Rawl, Circuit Court Judge

Unpublished Opinion No. 2004-UP-431
Submitted June 9, 2004  Filed July 15, 2004 

REVERSED

 
 
 
Stephen Lynwood Brown, of Charleston, for Appellants.
David and Christine March, of St. Helena, for Respondents.
 
 
 

PER CURIAM: Presidential Brokerage, Inc., 
 Scott Key, P. Georgia French, and Mark French (collectively Presidential) 
 appeal from an order denying their motion to compel arbitration.  We reverse. [1] 
FACTS
This case arises out of a dispute concerning 
 brokerage services Presidential agreed to perform for investors David and Christine 
 March.  In September 1998, the Marches opened four brokerage accounts with Presidential.  
 For each account, the Marches were required to sign various documents that set 
 forth the terms governing their relationship with the company.  
One of these documents, the Medallion Account 
 Agreement, contained the following notice in bold, capital letters: I acknowledge 
 that the agreements terms and conditions contain a predispute arbitration clause 
 on page 24 and acknowledge receipt of a copy of those terms and conditions. 
 The arbitration clause referred to was contained in a separate booklet entitled 
 Medallion Account Terms & Conditions.  The clause provided that all controversies 
 which may arise between [the Marches and Presidential] concerning any transaction 
 or the construction, performance, or breach of this or any other agreement between 
 us . . . shall be determined by arbitration. The Marches do not dispute that 
 they signed all of the documents presented to them by Presidential representatives, 
 including the Medallion Account Agreement. 
By 1999, Presidential had lost a significant portion 
 of the money in the Marches investment accounts.  Shortly thereafter, the Marches 
 closed their Presidential accounts.  A subsequent review of Presidentials brokerage 
 actions convinced the Marches that Presidential had mismanaged their money.  
 In October 2001, they initiated the present action against Presidential alleging 
 causes of action for fraud, breach of fiduciary duty, negligence, and violations 
 of the South Carolina Securities Act. 
Presidential denied the allegations and filed a 
 motion to dismiss and compel arbitration pursuant to the arbitration clause 
 contained in the Medallion Account Agreement signed by the Marches.  Shortly 
 thereafter, the Marches amended their original complaint to allege Presidential 
 fraudulently induced them to sign all of the documents pertaining to the brokerage 
 agreement, including the document containing the arbitration clause.  Specifically, 
 the Marches added a fifth cause of action for Fraud and Constructive Fraud 
 in Plaintiffs Signatures on Arbitration Provisions and Investment Incentive 
 Provisions.  Under this claim, they alleged, in pertinent part:

46.  After the funds were transferred 
 [to Presidential], on several occasions the Defendant Scott Key [a representative 
 of Presidential and named defendant in this action] came by the Plaintiffs 
 house with various papers that were to be signed.  He would generally uncover 
 only the part of the paper for a signature and told the Plaintiffs that they 
 needed to be signed for access to their accounts.  The Plaintiffs were never 
 given copies of the papers, were never given the option to read the papers and 
 any explanations given about the content of the papers were falsely answered.
47.  The Plaintiffs were forwarded 
 copies of the papers after this suit was filed and found that numerous items 
 on the papers had been put in that were not there when the Plaintiffs signed 
 them.  The dates on the papers were changed or made up and numerous of these 
 papers were signed by Georgia French, who the Plaintiffs have never met.
48. The representations and actions 
 by the Defendants to the Plaintiffs to induce them to sign these papers was 
 to obtain their consent to arbitration and their argument[ [2] ] to allow speculative investments by the Defendants. 

In the circuit court, the Marches argued 
 the determination of whether the arbitration clause was valid could not itself 
 be subject to arbitration but was rather a question for the court to decide.  
 The circuit court agreed, allowing discovery to proceed on the sole issue of 
 the enforceability of the arbitration clause.  All of the other claims raised 
 by the Marches as to Presidentials performance under the terms of the brokerage 
 agreement were held in abeyance pending the courts determination on arbitration. 

LAW/ANALYSIS
Presidential argues the circuit court erred in 
 denying its motion to compel arbitration.  We agree.
In Prima Paint Corporation v. Flood & Conklin 
 Manufacturing Co., 388 U.S. 395, 406 (1967), the United States Supreme Court 
 held that general allegations of fraud in the inducement of a contract are insufficient 
 to prevent the invocation of the arbitration provision of the contract.  Our 
 state supreme court has explained how the rule of Prima Paint should 
 be applied by our courts:

We join the jurisdictions which 
 have rejected limiting the holding in Prima Paint. We hold a party cannot 
 avoid arbitration through rescission of the entire contract when there is 
 no independent challenge to the arbitration clause. Fraud as a defense to 
 an arbitration clause must be fraud specifically as to the arbitration clause 
 and not the contract generally.

South Carolina Pub. Serv. Auth. v. Great W. Coal (Ky.), 
 312 S.C. 559, 562-63, 437 S.E.2d 22, 24 (1993) (emphasis added).
In this case, although the Marches amended their 
 complaint to separately plead a cause of action for fraudulent inducement of 
 the arbitration agreement, the allegations set forth in both the complaint and 
 the Marches affidavits only support their claim that they were fraudulently 
 induced to sign the entire contract, not specifically the arbitration clause. 
 [3]   Under the rule of Prima Paint and Great Western Coal, 
 therefore, it was improper for the circuit court to rule that the validity of 
 the arbitration clause was for the courts determination.  
Accordingly, the decision of the circuit court 
 is
 REVERSED.
 HEARN, C.J., STILWELL, J. and CURETON, 
 A.J., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 [2] This is probably a typographical error that was 
 most likely intended to be agreement rather than argument.

 
 
 
 [3] In their joint affidavit, the Marches asserted: We were totally 
 and completely deceived with the entire matter of opening this account and 
 what was going to occur in connection with it.