742 S.E.2d 37

Gregory W. SMITH and Stephanie Smith, Respondents,

v.

D.R. HORTON, INC., Tom's Vinyl Siding, LLC, Lutzen Construction, Inc., Boozer Lumber Company, All American Roofing, Inc., and Myers Landscaping, Inc., Defendants,

Of whom D.R. Horton, Inc. is the Appellant.

Appellate Case No. 2011–204347.

No. 5118.

Court of Appeals of South Carolina.

Heard Feb. 14, 2013.
Decided April 17, 2013.
Rehearing Denied May 23, 2013.

Matthew Kinard Johnson and W. Kyle Dillard, both of Ogletree Deakins Nash Smoak & Stewart, PC, of Greenville, for Appellant.

John T. Chakeris, of Chakeris Law Firm, of Charleston; Phillip Ward Segui, Jr., of Segui Law Firm, of Mount Pleasant; and Michael A. Timbes, of Thurmond Kirchner Timbes & Yelverton, PA, of Charleston, all for Respondents.

SHORT, J.

D.R. Horton, Inc. (Horton) appeals the circuit court's order denying its motion to compel arbitration in this construction

defects action filed by Gregory and Stephanie Smith. Horton argues the circuit court erred in finding the arbitration clause unenforceable: (1) under the South Carolina Uniform Arbitration Act (SCUAA); (2) as unconscionable; (3) under an unequal-bargaining-power theory; (4) under a lack-of-consideration theory; (5) under the Federal Arbitration Act (FAA); and (6) under a merger-by-deed theory. We affirm.

## I. FACTS

The Smiths purchased a house built by Horton in Summerville, South Carolina. The arbitration clause was included in the purchase agreement in Section 14, entitled "Warranties and Dispute Resolution." Section 14(a) provided for a warranty from Residential Warranty Corporation (RWC), which purported to be the only warranty extended by Horton, except for such warranties as cannot be disclaimed by law. Section 14(b) provided that validation of the RWC warranty was conditioned on Horton's compliance with all RWC's enrollment procedures and upon Horton remaining in good standing in the RWC program. Section 14(c) purported to disclaim all other warranties, express or implied, as to quality, fitness for a particular purpose, merchantability, and habitability. Section 14(c) further provided all disputes under the RWC warranty were subject to binding arbitration. Sections 14(d)–(f) provided exclusions to the warranty for landscaping. Section 14(g) addressed arbitration and provided the following:

> **Mandatory Binding Arbitration:** [The Smiths] and [Horton] each agree that, to the maximum extent allowed by law, they desire to arbitrate all disputes between themselves. The list of disputes which shall be arbitrated in accordance with this paragraph include, but are not limited to: (1) any claim arising out of [Horton's] construction of the home; (2) [Horton's] performance under any Punch List or Inspection Agreement; (3) [Horton's] performance under any warranty contained in this Agreement or otherwise; and (4) any other matters as to which [the Smiths and Horton] agree to arbitrate.

Section 14(h) provided that if a dispute arose prior to the closing date, Horton had the right to terminate the agreement, return the earnest money, and *"no cause of action shall accrue on behalf of [the Smiths] because of such termination."*

Section 14(i), prefaced "Limitation of Liability," disclaimed warranties except for those specifically provided or imposed by law, including "as to merchantability or fitness for a particular purpose, either expressed or implied.... [Horton] shall not be liable for monetary damages of any kind, including secondary, consequential, punitive, general, special or indirect damages." The final clause in the "Warranties and Dispute Resolution" section of the purchase agreement, section 14(j), provided the method of notice for requests of warranty service.

Alleging extensive defects in the home, the Smiths filed this action against Horton and numerous subcontractors, asserting claims for negligence, breach of contract, breach of warranties, and unfair trade practices. Horton moved to compel arbitration. After a hearing, the circuit court denied the motion, finding the following: (1) the arbitration provision was unconscionable; (2) the purchase agreement was merged into the deed, which did not contain an arbitration provision; and (3) the arbitration provision failed to meet the SCUAA. In an order denying Horton's motion for reconsideration, the court also found the parties were not of equal bargaining power, and there was no consideration given in exchange for the Smiths' sacrifice of certain rights. This appeal follows.

## II. STANDARD OF REVIEW

"Arbitrability determinations are subject to *de novo* review." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007) (citing *Wellman, Inc. v. Square D Co.*, 366 S.C. 61, 67, 620 S.E.2d 86, 89 (Ct.App.2005)). However, the trial court's "factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id.* (citing *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003)). "The validity of an arbitration clause which is attacked on the grounds of unconscionability raises a question of law." *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 393–94, 498 S.E.2d 898, 901 (Ct.App.1998) (citation omitted). "In an action at law, the appellate court's jurisdiction is limited to the correction of errors of law and factual findings which are unsupported by any evidence." *Id.* at 394, 498 S.E.2d at 901 (citation omitted).

## III. APPLICABLE LAW

### A. Unconscionability

■ Horton argues the circuit court erred in denying the motion to compel arbitration based on unconscionability. We disagree.

■ "Arbitration is a matter of contract and controlled by contract law." *S.C. Pub. Serv. Auth. v. Great W. Coal (Kentucky), Inc.*, 312 S.C. 559, 563, 437 S.E.2d 22, 25 (1993) (citation omitted). "[A] party may seek revocation of the contract under 'such grounds as exist at law or in equity,' including fraud, duress, and unconscionability." *Simpson*, 373 S.C. at 24, 644 S.E.2d at 668 (quoting S.C.Code Ann. § 15–48–10(a) (2005)). When deciding a motion to compel arbitration under the SCUAA or the FAA, the court should look to the state law that ordinarily governs the formation of contracts in determining whether a valid arbitration agreement arose between the parties. *Hooters of Am., Inc. v. Phillips*, 39 F.Supp.2d 582, 610 (D.S.C.1998), *aff'd and remanded*, 173 F.3d 933, 941 (4th Cir.1999); *Simpson*, 373 S.C. at 24, 644 S.E.2d at 668.

■ "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 24–25, 644 S.E.2d at 668 (citing *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004)). "In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit [Court of Appeals] has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Id.* at 25, 644 S.E.2d at 668. Our supreme court adopted the Fourth Circuit's view, and noted "[i]t is under this general rubric that we determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 669 (citation omitted).

In *Simpson*, the plaintiff sued the defendant auto dealer for alleged violations of the South Carolina Unfair Trade Practices Act, among other causes of action. *Id.* at 21, 644 S.E.2d at 666. The plaintiff signed a contract that included an arbitration clause, and the auto dealer sought to stay the court proceeding and compel arbitration. *Id.* at 19–21, 644 S.E.2d at 666. Our supreme court upheld a denial of the auto dealer's motion to compel arbitration finding, *inter alia,* a lack of mutuality of remedy because the defendant had the right to proceed in court while "completely disregard[ing] any pending consumer claims that require[d] arbitration." *Id.* at 31, 644 S.E.2d at 672. The court emphasized that lack of mutuality of remedy alone does not make an arbitration agreement unconscionable. *Id.* The court noted, "there is no specific set of factual circumstances establishing the line which must be crossed when evaluating an arbitration clause for unconscionability.... Instead, we emphasize the importance of a case-by-case analysis in order to address the unique circumstances inherent in the various types of consumer transactions." *Id.* at 36, 644 S.E.2d at 674.

In this case, the circuit court viewed the Warranties and Dispute Resolution Section 14 as a whole, finding it "referenced that certain disputes are to be resolved by mandatory binding arbitration along with an entire host of attempted waivers of important legal remedies...." The court found the attempts to disclaim implied warranty claims were oppressive and unconscionable. The court also found "perhaps even more stark are the provisions in the Limitations of Liability in subsection [14](i) ... in addition to the attempted waiver of various important remedies" in which Horton claimed it could not be liable for monetary damages of any kind. The court concluded the relevant arbitration provision was "wholly unconscionable and unenforceable based on the cumulative effect of a number of oppressive and one-sided provisions."

Relying on the supreme court's analysis in *Simpson*, we affirm the trial court's finding of unconscionability, particularly in light of the lack of mutuality of remedy imposed by Section 14(i), which purported to exempt Horton from liability for monetary damages.

## B. Severability

██ Horton next argues the arbitration clause is not made unconscionable by the other allegedly unconscionable provisions in the agreement, and it should be severed from any unconscionable terms of the agreement. We disagree.

██ "[A]n arbitration clause is separable from the contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole." *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 540, 542 S.E.2d 360, 364 (2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). However, "a party cannot avoid arbitration through rescission of the entire contract when there is no independent challenge to the arbitration clause." *Great W. Coal (Kentucky), Inc.*, 312 S.C. at 562–63, 437 S.E.2d at 24. Our supreme court acknowledged that "in light of the state and federal policies favoring arbitration, many courts view severing the offending provision and otherwise proceeding with arbitration to be the preferred remedy for an unconscionable provision in an arbitration clause." *Simpson*, 373 S.C. at 35 n. 9, 644 S.E.2d at 674 n. 9. However, the court found invalidation of the arbitration clause in its entirety was the appropriate remedy because there were three unconscionable provisions, and two of the provisions were unconscionable because they contravened state and federal consumer protection law. *Id.* The court concluded, "The sheer magnitude of unconscionability present in a provision that prevents a party from vindicating the party's statutory rights, along with the fact that such a grossly unconscionable provision occurred not once, but *twice,* requires that we give significant consideration to a remedy in this situation that best serves the interests of public policy." *Id.* The supreme court also stated the following:

> [L]egislation permits this Court to "refuse to enforce" any unconscionable clause in a contract or to "limit its application so as to avoid an unconscionable result." S.C.Code Ann. § 36–2–302(1) (2003).

> At the same time, courts have acknowledged that severability is not always an appropriate remedy for an unconscionable provision in an arbitration clause. Although, "a critical

consideration in assessing severability is giving effect to the intent of the contracting parties," the D.C. Circuit recently cautioned, "If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties." *Booker v. Robert Half Int'l Inc.*, 413 F.3d 77, 84–85 (D.C.Cir.2005) (citations omitted). Similarly, the general principle in this State is that it is not the function of the court to rewrite contracts for parties. *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002).

*Id.* at 34, 644 S.E.2d at 673–74; *see also Hooters of Am., Inc.*, 173 F.3d at 940 (finding rescission to be the appropriate remedy where Hooters promulgated so many biased arbitration rules that the contract created "a sham system unworthy even of the name of arbitration").

We conclude the arbitration clause in this case should not be severed from the numerous unconscionable provisions and particularly Horton's attempt to waive any seller liability for "monetary damages of any kind, including secondary, consequential, punitive, general, special or indirect damages." Because we affirm the finding of unconscionability and find the provision should not be severed, we need not reach the issue of whether the SCUAA or the FAA applies. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when resolution of another issue disposes of the appeal).

## IV. CONCLUSION

Because we affirm the circuit court's finding of unconscionability and find the arbitration clause should not be severed from the purchase agreement, we decline to address Horton's arguments regarding unequal bargaining power, lack of consideration, and merger-by-deed. *See id.* (holding an appellate court need not address remaining issues when resolution of another issue disposes of the appeal).

**AFFIRMED.**

THOMAS and PIEPER, JJ., concur.